IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Jose Marquez, individually and on behalf of all persons similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 07 C 2024 |
| v. | ) ) | Judge Virginia M. Kendall |
| PartyLite Worldwide, Inc., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jose Marquez alleges that he and other similarly situated employees of Defendant PartyLite Worldwide, Inc. were wrongfully denied overtime pay when PartyLite misclassified them as "exempt" employees to avoid federal and state overtime laws. Plaintiff asserts his claims under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the state common law remedies of quantum meruit and unjust enrichment. Defendant now moves to strike Plaintiff's class allegations related to his IMWL claim pursuant to Rule 12(f), and to dismiss Plaintiff's quantum meruit and unjust enrichment claims pursuant to Rule 12(b)(6).

Because the FLSA does not expressly preclude class relief for wage claims brought under other statutes, Plaintiff's class allegations related to his IMWL claim are not "immaterial matters" that should be stricken under Rule 12(f). However, given the history of the FLSA and Rule 23, any class that does not follow the procedures set forth in § 216(b) of the FLSA is not likely to meet Rule 23's superiority requirement. As to Plaintiff's quantum meruit and unjust enrichment claims, Rule 8(e)(2) permits a party to plead alternative, even inconsistent, theories of relief. Thus, although Plaintiff's state common law claims are based upon the same facts as his FLSA claim, dismissal

under Rule 12(b)(6) is not appropriate.

## Standard of Review

When considering a Rule 12(b)(6) motion, the court must accept as true all the allegations in the complaint and construe all reasonable inferences in favor of the plaintiff. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). In order to state a claim, a plaintiff must allege facts that plausibly suggest he is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). Rule 12(f) provides that a "court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

## Discussion

The Fair Labor Standards Act of 1938 sets the requirements for minimum wages, overtime pay, equal pay, recordkeeping and child labor standards for covered employees – in the words of Franklin D. Roosevelt, the FLSA ensures "[a] fair day's pay for a fair day's work." Subject to certain exemptions, the FLSA requires employers to pay their employees at least time-and-a-half for each hour the employee works over forty hours during a week. 29 U.S.C. § 207(a)(1). If an employer violates this provision, an employee may bring "a collective action" on behalf of himself and other employees similarly situated to recover unpaid overtime compensation. 29 U.S.C. § 216(b); *see Harkins v. Riverboat Services, Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004). The procedures in Rule 23 usually govern class actions in federal court. Under Rule 23(c)(2)(B), an individual becomes a member of the class, and thereby bound by any judgment in the matter, unless he expressly opts-out. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 807-09 (1985). The FLSA, in contrast, provides that no employee may join the collective action "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Under this language, members of a collective action opt-in, rather

than opt-out, of the class. *See King v. General Electric Co.*, 960 F.2d 617, 621 (7th Cir. 1992); *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982).

## I. Motion to Strike Plaintiff's Allegations Related to His State Law Claims

Plaintiff alleges class claims under both the FLSA and state law. While § 216(b)'s collective action procedure will govern the FLSA claims, the state law claims would proceed under Rule 23. Defendant argues that a Rule 23(b)(3) opt-out class will subvert Congress' intent to limit wage actions to those employees that affirmatively opt-in. Judge Shadur raised this concern in an order entered shortly after a complaint containing FLSA and IMWL claims was filed:

> There are powerful policy considerations that led Congress to change the original version of the Fair Labor Standards Act by enacting the Portal to Portal Act of 1947 so as to require the opt-in procedure via individualized written consents by employees wishing to join such actions (see *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989)). That policy and the underlying congressional intent would be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement.

*Rodriguez v. The Texan, Inc.*, 2001 WL 1829490, *2 (N.D. Ill. 2001). Since that cautionary order, at least eight opinions in this district have addressed directly whether a plaintiff may pursue a Rule 23(b)(3) opt-out class on a state-law claim when he also asserts a claim under the FLSA.

Three primary reasons are given for refusing to certify such a state-law class: (1) that it would undermine Congress' creation of the "collective action" procedure in the FLSA, *see, e.g., McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 578 (N.D. Ill. 2004) (certifying class on state-law claims "would undermine Congress's directive that FLSA collective actions are limited to those parties who opt in to the action"); (2) the concern that absent class members would be confused by "a notice that both calls for a decision whether to opt-in to the collective action and also whether to opt-out of the class action," *De La Fuente v. FPM Ipsen Heat Treating, Inc.*, 2002 WL 31819226, *2 (N.D. Ill.

3

2002); and (3) the prudential limits of a federal court's exercise of supplemental jurisdiction, *see, e.g., Harper v. Yale Int'l Insur. Agency, Inc.*, 2004 WL 1080193, *5 (N.D. Ill. 2004) (noting that a large class of state law claimants would cause "the federal tail represented by a comparative small number of plaintiffs to wag what is in substance a state dog"), *quoting De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3rd Cir. 2003). Reflecting several of these concerns, Judge Kennelly noted that if only a few employees exercise their opt-in and opt-out rights "we would be left with the rather incongruous situation of an FLSA 'class' including only a tiny number of employees who are interested in seeking back wages, with a state-law class that nonetheless includes all or nearly all of the companies' present or former employees." *Muecke v. A-Reliable Auto Parts and Wreckers, Inc.*, 2002 WL 1359411, *2 (N.D. Ill. 2002). Attempting to deal with some of these problems, several courts have waited until the FLSA's opt-in period is complete before deciding whether to certify an opt-out class on any state-law claims. *See Harper*, 2004 WL 1080193 at *5 (citing cases).

The opinions that certified state-law classes relied on the facts that: (1) nothing in the FLSA seeks to limit wage claims or remedies available under other statutes, *see, e.g., Acosta v. Scott Labor, LLC*, 2006 WL 27118, *5 (N.D. Ill. 2006); *see also Lindsey v. Government Employees Insur. Co.*, 448 F.3d 416, 421 (D.C. Cir. 2006) (rejecting the argument that § 216(b) "manifests that the Congress intended to require opting-in for the entire litigation, not merely the FLSA claims"); (2) supplemental jurisdiction should be exercised because it would be inefficient to proceed with the FLSA collective action in federal court, while requiring the employees to pursue class relief under state law – based upon the same facts – in the state courts, *see O'Brien v. Encotech Constr. Srvcs.*, 203 F.R.D. 346, 352 (N.D. Ill. 2001), and (3) defendants, who removed the case to federal court, cannot complain about a plaintiff utilizing a remedy that would have been available to him in the state courts, *see, e.g., Yon v. Positive Connections, Inc.*, 2005 WL 628016, *4 (N.D. Ill. 2005).

In determining whether Plaintiff may pursue an opt-out class on his state-law claims, this Court begins with the assumption that the usual federal procedures apply in each case or controversy. *See Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) ("In the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the Rules established for that purpose, class relief is appropriate"). An opt-out class under Rule 23 is the federal procedure usually applicable to claims seeking monetary relief on behalf of similarly situated individuals. The FLSA modifies this procedure for claims brought pursuant to its provisions.[1] *See King*, 960 F.2d at 621. Because the FLSA does not expressly provide that its modified procedure applies to all wage disputes, Rule 23's "usual course" applies to Plaintiff's state law claims. For this reason, this Court will not strike Plaintiff's class allegations related to his IMWL claim. Nevertheless, as part of Rule 23's usual course, Plaintiff will be required to show that an opt-out class is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The history of the FLSA and Rule 23 provide significant direction on the superior method for adjudicating controversies involving employee wage complaints.

Congress articulated two concerns when it amended the FLSA in 1947. First, in *Anderson v. Mt. Clemens Pottery Co.*, the Supreme Court held that the compensable work week included walking from the time clock to an employee's work station and also "certain preliminary activities after arriving at their places of work, such as putting on aprons and overalls, removing shirts, taping or greasing arms, putting on finger cots, preparing the equipment for productive work, turning on switches for lights and machinery, opening windows and assembling and sharpening tools" – so-

---

[1] The Age Discrimination in Employment Act ("ADEA") adopts the FLSA's collective action procedure for the enforcement of fair labor standards. *See* 29 U.S.C. § 626(b).

called "Portal-to-Portal" activities. 328 U.S. 680, 691-693 (1946). In response, Congress amended the FLSA, finding that it "ha[d] been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers." 29 U.S.C. § 251. Senator Donnell, chairman of the subcommittee which conducted hearings on the FLSA amendments, explained Congress' second concern:

> We now proceed to the final portion of the bill, Part IV. Section 8 contains a provision entitled "Representative Actions Banned." Let me just say a word about what is meant by representative actions. It will be recalled that in section 16(b) of the Fair Labor Standards Act there is a provision reading as follows:
>
> Action to recover such liability-
>
> This is, the liability for unpaid minimum wages, unpaid overtime compensation, and liquidated damages-
>
> Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.
>
> It will be observed, Mr. President, that two types of actions are permitted under this sentence in section 16(b) of the Fair Labor Standards Act of 1938: First, a suit by one or more employees, for himself and all other employees similarly situated. That I shall call for purposes of identification a collective action, a suit brought by one collectively for himself and others. The second class of actions authorized by that sentence embrace those in which an agent or a representative who may not be an employee of the company at all can be designated by the employee or employees to maintain an action on behalf of all employees similarly situated.
>
> In illustration of this latter category-which category for purposes of identification I call a representative action, as distinguished from a collective action-suppose that everyone here present this afternoon were employed by the X steel company, and we all belonged to a labor union, and gave a power of attorney to the district director of the labor union who might live 500 miles away and not be employed

> at all in the plant in which we were employed. He could file a suit there as representative of all of us. We would not be in that case at all except as he is our representative. It will be noted, therefore, Mr. President, that in those two classes of cases there is this difference: In the first case, an employee, a man who is working for X steel company can sue for himself and other employees. We see no objection to that. But the second class of cases, namely, cases in which an outsider, perhaps someone who is desirous of stirring up litigation without being an employee at all, is permitted to be the plaintiff in the case, may result in very decidedly unwholesome champertous situations which we think should not be permitted under the law.
>
> So section 8 amends the Fair Labor Standards Act by eliminating that portion of section 16(b) which permits employees to designate an agent or representative to maintain an action for and in behalf of all employees similarly situated.

93 Cong. Rec. 2182. Thus, while the FLSA amendment eliminated actions brought by certain designated representatives, Senator Donnell had no quarrel with an employee bringing a collective action on behalf of himself and other similarly situated employees.

In addition to banning "representative" actions, Congress also amended the FLSA by adding the requirement that an employee file written consent in order to join a collective action. 93 Cong. Rec. 2182. Of course, to say that Congress added the written consent requirement is both true and misleading. During the same year that Congress passed the FLSA, Rule 23 governing class actions was adopted. The original version of Rule 23 identified three types of class actions: true, spurious and hybrid. A true class action was one wherein "the number of persons having substantially identified interests in the subject matter or litigation is so great that it is impracticable to join all of them as parties, in accordance with the usual rules of procedure, and in which an issue raised which is common to all of such persons." *Pentland v. Dravo Corp.*, 152 F.2d 851, 852 (3d Cir. 1945), *quoting* Restatement Judgments, Sec. 86(b). A true class action also required that the "right to be enforced was joint, common or derivative." *Id.*, *quoting* Moore (2 Federal Practice 2236). A

7

spurious action was a "permissive joinder device" that allowed "numerous persons interested in a common question of law or fact" to resolve their disputes in an efficient and consistent manner. *Id.*, *quoting* Moore (2 Federal Practice 2241). A hybrid action involved individual plaintiffs that had claims to a common fund. *Id.* The overwhelming weight of authority prior to 1947 held that § 216 called for a spurious class action. *See id.* at 853-56 (citing cases). Thus, while Congress amended the FLSA to include the written consent requirement, it, in effect, just codified the prevailing practice.

In 1966, Rule 23 was amended. The terms "true, spurious and hybrid" were abandoned in favor of the current Rule 23. The current Rule 23(b)(3) requires that a class action be the superior method for fairly and efficiently adjudicating class members' claims. Among the non-exhaustive lists of factors that a court should consider in making the superiority determination is "the interest of members of the class in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). On this point, the Advisory Committee Notes cite "*Pentland v. Dravo Corp.*, 152 F.2d 851 (3d Cir. 1945), and Chafee, *Some Problems of Equity*, at 273-75 (1950), regarding policy of Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C. § 216(b), prior to amendment by Portal-to-Portal Act of 1947, § 5(a)."[2] *Pentland* was one of many cases holding that a spurious action, an opt-in class, best effectuated Congress' intent to protect employee rights in the FLSA. *Pentland*, 152 F.2d at 853; *see also Lofther et al. v. First Nat. Bank of Chicago*, 45 F. Supp. 986, 988 (N.D. Il1. 1941); *Saxton v. W.S. Askew Co.*, 35 F. Supp. 519, 520 (N.D. Ga. 1940). Chafee likewise concluded that the best method for resolving employee wage claims was through "an Invitation to Come In," whereby an individual employee could "jump on the bandwagon" if he

---

[2] The Advisory Committee Notes also make clear that "[t]he present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as amended."

wanted. Chafee, *supra*, at 274-75. Along the same line, both the cases and commentary shared the opinion that an employee should not be bound by a judgment unless he affirmatively chose to join the litigation.[3] *See* Chafee, *supra*, at 275 ("The very support Congress gives [employees'] claims indicates an unwillingness to let them be barred by what somebody else does"); *Pentland*, 152 F.2d at 853 ("If [the representative] should lose his lawsuit, it certainly would be a startling result to find that every fellow employee was bound by the estoppel of that judgment when he came to sue the employer"); *Saxton*, 35 F. Supp. at 521 ("[T]here can be no intention implied that Congress in the passage of the [FLSA]" meant for employees "to have their rights adjudged, or maybe precluded, by an action maintained by another, of which they might have no knowledge").

Based on the Advisory Committee Notes to Rule 23 and Congress' addition of the written consent requirement to the FLSA, an opt-out class action is not likely to be the superior method for resolving Plaintiff's state-law claims that Defendant failed to make overtime payments. In any respect, it will be wise to delay any decision on certifying a state-law claim under Rule 23 until after notice has been sent pursuant to the FLSA and the written consents returned.[4] After the consents are returned, the Court will have a better idea of the number of class members and their various situations. With that information, the Court properly can assess whether Rule 23's requirements – such as, joinder being impracticable, commonality, superiority and adequacy of representation – are

---

[3] The Court recognizes that these opinions and commentary convey a somewhat antiquated view of the class action device. Over the several decades since the 1966 Amendments, courts have become increasingly willing to accept the many fictions and deficiencies in the class action procedure in order to utilize its benefits. Among these fictions are the notions that the class representative, as opposed to class counsel, controls the litigation and that class members will receive notice of the action so that they may exercise their opt-out rights.

[4] Assuming that Plaintiff can meet the requirements for notification. *See Jonites v. Exelon Corp.*, 2006 WL 2873198, *2 (N.D. Ill. 2006) (describing the two-step inquiry for notification and certification in a FLSA collective action).

met. Based on the number of individuals that opt-into the action, the Court also can determine whether exercising supplemental jurisdiction over a state law class would be prudent.[5] *See* 28 U.S.C. § 1367(a)(2) ("District courts may decline to exercise supplemental jurisdiction over a claim . . . if the claim substantially predominates over the claim or claims over which the district court has original jurisdiction"). Finally, the Court is cognizant that Defendant removed this case from state court where Plaintiff likely would have been able to pursue a class action on his IMWL claim. Nevertheless, the action now being in federal court, the Federal Rules of Civil Procedure apply. *See* Fed. R. Civ. P. 81(c). As such, Rule 23(b)(3)'s superiority requirement must be met before this Court may certify an opt-out class.

## II.     Motion to Dismiss Plaintiff's Common Law Claims

Plaintiff has alleged claims under both the FLSA and the common law theories of quantum meruit and unjust enrichment. Federal Rule of Civil Procedure 8(e)(2) provides that a party may plead alternative theories of relief under both legal and equitable grounds. While Plaintiff may not obtain double recovery, he is free to pursue relief under the FLSA as well as unjust enrichment and quantum meruit. *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003).

---

[5] If "state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966). There is disagreement over whether the size of a class may cause a state-law claim to predominate over a federal claim under § 1367(a)(2). The basis for certifying any class is a finding that the class claims will be tried through an adequate representative whose claims are based on questions common to all class members. *See* Rule 23(b)(3). Given this fact, it is unlikely that the size of the class would affect greatly the evidence presented or the scope of the issues raised. The tougher question revolves around the comprehensiveness of the remedy. This question will turn on whether the remedy's comprehensiveness is measured as to each class member or whether it is measured as to the class as a whole. *Compare Lindsey*, 448 F.3d at 425 ("Predomination under section 1367(c)(2) relates to the type of claim," not the number of claimants) *with De Asencio*, 342 F.3d at 311 (disparity in number of claimants under one claim can be dispositive of the predominance issue).

**Conclusion and Order**

Because the FLSA does not expressly prohibit Rule 23 class certification on wage claims brought under other statutes, Plaintiff's class allegations related to his state-law claims are not immaterial matters. Additionally, Rule 8(e)(2) allows Plaintiff to plead alternatively his theories under the FLSA, quantum meruit and unjust enrichment. Wherefore, Defendant's Motion to Strike and Dismiss is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: August 27, 2007